# IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF SOUTH CAROLINA
## CHARLESTON DIVISION

| | |
|---|---|
| Booze Pops LLC, a South Carolina limited liability company; Booze Pops Corporate LLC, a South Carolina limited liability company; and Booze Pops Distribution LLC, a South Carolina limited liability company,<br><br>    Plaintiffs,<br><br> v.<br><br>Real Estate Flipz, Inc., a Florida corporation; Buzz Pop Cocktails Corporation, a Florida corporation; Ruskaboy Holdings LLC; Joseph Isaacs, an individual; and Juan C. Sastre, an individual,<br><br>    Defendants. | Civil Action No. 2:20-cv-691-RMG<br><br>**ORDER AND OPINION** |

This matter is before the Court on Defendants' motion to dismiss or to transfer venue (Dkt. No. 14). For the reasons set forth below, the Court grants in part and denies in part the motion.

## **Background**

Plaintiffs are Booze Pops, LLC ("Booze Pops"), Booze Pops Corporate, LLC ("Booze Pops Corporate") and Booze Pops Distribution, LLC ("Booze Pops Distribution," collectively "Plaintiffs"). Booze Pops manufacturers and sells alcohol-infused popsicles ("AIPs") out of ice-cream trucks or other mobile vehicles. (Dkt. No. 1 ¶ 20). Booze Pops operates franchise opportunities through Booze Pops Corporate and Booze Pops Distribution. (*Id.* ¶ 39). Plaintiffs are all South Carolina residents.

-5-

Defendants are R.E. Flipz, LLC ("R.E. Flipz"), d/b/a as "Buzz Pop Cocktails," a manufacturer and distributer of AIPs, Ruskaboy Holdings, LLC ("Ruskaboy"), Buzz Pop Cocktails Corporation, LLC ("BPCC"), Joseph Isaacs, and Juan C. Sastre (collectively "Defendants"). All Defendants are Florida residents. Isaacs is allegedly Chief Operating Officer of BPCC and Sastre its President. (*Id.* ¶¶ 14-15). At all times pertinent to the action, Ruskaboy was allegedly the managing member of R.E. Flipz. (*Id.* ¶ 9). Isaacs allegedly dissolved R.E. Flipz on January 31, 2019 and BPCC, the successor in interest to R.E. Flipz, acquired all property owned by R.E. Flipz, including the fictitious name "Buzz Pop Cocktails." (*Id.* ¶¶ 7, 144).

In or around July 2017, Booze Pops began supplying itself with AIPs manufactured by R.E. Flipz. (*Id.* ¶ 119). On May 17, 2018, Plaintiffs and R.E. Flipz entered into an Exclusive Retail Sales Agreement ("ERSA"), a full copy of which is attached to Plaintiffs' Complaint. (*Id.* ¶ 123); (Dkt. No. 1-10) (executed ERSA). The ERSA grants Plaintiffs the exclusive right to distribute and sell AIPs manufactured by R.E. Flipz to "retail mobile vendors and franchisees of Booz Pop Corporate LLC throughout the United States of America and its territories (herein referred to as the 'Territory')." (Dkt. No. 1-10 at 3). Under the ERSA, R.E. Flipz agrees "not to sell the Products to any other person or entity for use, sale, or distribution within the Territory for mobile vending sales." (*Id.*). The ERSA has a three-year term. (*Id.*). The ERSA includes a "non-competition" clause whereby R.E. Flipz agrees not to compete with Plaintiffs "in the Territory in competitive business in mobile vending of the Products" during the life of the contract and for two years following termination of the contract. (*Id.* at 6). The ERSA is governed by South Carolina law, (*id.* at 7), and contains a forum selection clause whereby the parties agree the courts of South Carolina, whether state or federal, "have sole jurisdiction over

any matter arising from the interpretation, purpose, effect, or operation" of the ERSA, (*id.* at 9). Plaintiffs and R.E. Flipz consent to "venue in Charleston County," "waive any rights they may have to assert jurisdiction or venue in any other court," and agree the ERSA "shall be binding upon, shall inure to the benefit of, and shall be enforceable by and against all Parties and their respective heirs, legal representatives, personal representatives, successors and permitted assigns." (*Id.* at 8-9).

Plaintiffs allege R.E. Flipz and BPCC—R.E. Flipz's successor in interest—are in breach of the ERSA. Plaintiffs allege R.E. Flipz and BPCC engage in mobile vending and franchising in violation of the ERSA. (¶¶ 166-186). Certain allegations contend violations of the ERSA occurred in or were specifically directed toward South Carolina. (*Id.* ¶¶ 170, 174, 177-180).

Plaintiffs further allege that Isaacs, R.E. Flipz, and Ruskaboy wrongfully obtained three trademark registrations from the United States Patent and Trademark Office and that R.E. Flipz and BPCC use said trademarks to infringe on Plaintiffs' own marks. The three trademarks at issue are: (1) "BUZZPOPS Application no. 87-128,586; Registration no. 5,425,863,"; (2) "BPC LICK Application no. 87-238,380; Registration no. 5,274,769,"; and (3) "BUZZ POP COCKTAILS Application no. 87-270,283; Registration no. 5,467,024." Plaintiffs allege that Isaacs, R.E. Flipz, and Ruskaboy made false and misleading statements to the USPTO in the applications for said trademarks. Plaintiffs allege that R.E. Flipz and Ruskaboy subsequently transferred said trademarks to BPCC, but that these transfers are "invalid." Plaintiffs seek the cancellation of all three trademarks and their respective assignments. Plaintiffs further allege that R.E. Flipz and BPCC use their wrongfully obtained trademarks to infringe on Plaintiffs' own "BOOZE POPS" mark.

Lastly, Plaintiffs allege that Defendants falsely advertise Buzz Pop Cocktails products by making false claims as to their alcohol and chloric contents. (*Id.* ¶¶ 199-211). Plaintiffs allege Defendants falsely represent that celebrities endorse Buzz Pop Cocktails, and that Defendants falsely advertise BPCC is a "veteran-led business," though neither Isaacs nor Sastre is a veteran. (*Id.* ¶¶ 218-225).

Prior to Plaintiffs filing the instant action, on July 29, 2019, BPCC filed a lawsuit against Booze Pops in the United States District Court for the Middle District of Florida. *Buzz Pop Cocktails Corp. v Booze Pops*, C/A No. 8:19-cv-01840 (M.D. Fla.) (the "Florida Action"). BPCC alleged that Booze Pops "historically purchased [AIPs] from [BPCC] for resale and enjoyed an implied limited license (first sale doctrine) to use [BPCC's] Marks exclusively to promote the sale of [BPCC's] products, however, [BPCC] terminated its relationship with [Booze Pops] in August 2018 and [Booze Pops] continues to use [BPCC's] Marks to enhance and promote its business beyond the sale of Plaintiff's products." (Dkt. No. 14-2 at 8) (attaching BPCC's Amended Complaint from the Florida Action). BPCC brought claims related to Booze Pops' alleged trademark infringement and a breach of contract claim related to an order of "114 cases of Buzz Pop cocktails" Booze Pops allegedly never paid for. (*Id.* at 9-14). BPCC's Amended Complaint in the Florida Action nowhere mentions the ERSA. On April 22, 2020, however, the Florida court dismissed BPCC's Amended Complaint on the basis that it lacked personal jurisdiction over Booze Pops. (Dkt. No. 15-1) (attaching *Order*, *Buzz Pop Cocktails Corp. v. Booze Pops, LLC*, No. 8:19-cv-1840-MSS-TGW (M.D. Fla. April 22, 2020)). BPCC were given leave to file a seconded amended complaint to cure said jurisdictional deficiencies.

On February 11, 2020, Plaintiffs filed the instant Complaint. Plaintiffs bring eleven causes of action: (1) Federal False Advertising, 15 U.S.C. § 1125(a), against R.E. Flipz, BPCC,

-5-

and Isaacs; (2) Cancellation of Trademark Registrations No. 5,425,863, No. 5,274,769 and No. 5,467,024 pursuant to 15 U.S.C. § 1119; (3) Fraud in Procurement of Trademark Registrations, 15 U.S.C. § 1120, against Ruskaboy, R.E. Flipz, BPCC, and Isaacs; (4) Federal Trademark Infringement, False Association, False Designation of Origin, and Unfair Competition, 15 U.S.C. § 1125(a), against R.E. Flipz and BPCC; (5) South Carolina Trademark Infringement, S.C. Code § 39-15-1160, against R.E. Flipz and BPCC; (6) South Carolina Unfair Trade Practices, S.C. Code § 39-5-20, *et seq.*, against all Defendants; (7) Breach of Contract against R.E. Flipz and BPCC; (8) Breach of Contract with Fraudulent Act against R.E. Flipz and BPCC; (9) Breach of Express Warranties against R.E. Flipz and BPCC; (10) Florida Deceptive and Unfair Trade Practices, Fla. Stat. § 501.201, *et seq.*, against all Defendants; and (11) Florida Common Law Unfair Competition against all Defendants.

On April 13, 2020, Defendants filed a motion to dismiss or to transfer venue. (Dkt No. 14). Defendants argue that: (a) this Court lacks personal jurisdiction over all Defendants; and that, (b) even if this Court did have personal jurisdiction over Defendants, the "first-to-file" rule dictates that the Court transfer this action to the Middle District of Florida. Plaintiffs have filed an opposition to Defendants' motion, (Dkt. No. 15), and Defendants have filed a reply, (Dkt. No. 16). Defendants' motion is fully briefed and ripe for disposition.

## **Legal Standard**

### a) Improper Venue — The First-to-File Rule

Defendants argue that venue is improper pursuant to the "first-to-file rule." The first-to-file rule provides that "when multiple suits are filed in different Federal courts upon the same factual issues, the first or prior action is permitted to proceed to the exclusion of another

subsequently filed." *Allied–Gen. Nuclear Servs. v. Commonwealth Edison Co.*, 675 F.2d 610, 611 n. 1 (4th Cir. 1982) (citing *Carbide & Carbon Chems. Corp. v. United States Indus. Chems., Inc.*, 140 F.2d 47, 49 (4th Cir. 1944)). "The decision to invoke the first-filed rule is an equitable determination that is made on a case-by-case, discretionary basis," *Barr v. EQT Prod. Co.*, No. 5:14CV57, 2015 WL 2452635, at *3 (N.D.W. Va. May 22, 2015), because the Fourth Circuit "has no unyielding first-to-file rule." *CACI Intern., Inc. v. Pentagen Techs. Int'l.,* 70 F.3d 111, 1995 WL 679952, at *6 (4th Cir. 1995) (unpublished). Exceptions to the rule are common "when justice or expediency requires." *Samsung Elecs. Co. v. Rambus, Inc.*, 386 F.Supp.2d 708, 724 (E.D. Va. 2005). The principle is a "judge-made tool" designed to promote "judicial and litigant economy, and the just and effective disposition of disputes." *Scardino v. Elec. Health Res., LLC*, No. 2:14-CV-2900-PMD, 2016 WL 1321147, at *3 (D.S.C. Apr. 5, 2016). Courts applying the principle typically stay or transfer the later-filed action.

Procedurally, the court first considers whether the two competing actions are substantively the same or sufficiently similar to come within the ambit of the first-to-file rule. To determine if there is sufficient similarity to bring the first-to-file rule into play, courts consider: (1) the chronology of the filings, (2) the similarity of the parties involved, and (3) the similarity of the issues at stake. *Victaulic Co. v. E. Indus. Supplies, Inc.*, No. CIV.A. 6:13-01939, 2013 WL 6388761, at *3 (D.S.C. Dec. 6, 2013); *Condon v. Haley*, 21 F. Supp. 3d 572, 581 (D.S.C. 2014) (emphasizing that "the most basic aspect of the first to file rule is that it is discretionary" and that "the decision and the discretion belong to the district court").

    b) **Motion to Dismiss for Lack of Personal Jurisdiction**

Defendants move to be dismissed from this action for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2). They assert Plaintiffs' Complaint contains only "conclusory shotgun allegations" as to Defendants' contacts with the state of South Carolina which cannot serve as a basis for this Court to find personal jurisdiction. (Dkt. No. 14-1 at 7).

When a court's personal jurisdiction is challenged under Rule 12(b)(2) the burden is on the plaintiff to establish that a ground for jurisdiction exists. *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989). When the court resolves the motion on written submissions (as opposed to an evidentiary hearing), the plaintiff need only make a "prima facie showing of a sufficient jurisdictional basis." *Id.* However, the plaintiff's showing must be based on specific facts set forth in the record. *Magic Toyota, Inc. v. S.E. Toyota Distribs., Inc.*, 784 F. Supp. 306, 310 (D.S.C. 1992). The Court may consider the parties' pleadings, affidavits, and other supporting documents but must construe them "in the light most favorable to plaintiff, drawing all inferences and resolving all factual disputes in his favor, and assuming plaintiff's credibility." *Sonoco Prods. Co. v. ACE INA Ins.*, 877 F. Supp. 2d 398, 404–05 (D.S.C. 2012) (internal quotation and alteration marks omitted); *see also Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 396 (4th Cir. 2003) ("In deciding whether the plaintiff has made the requisite showing, the court must take all disputed facts and reasonable inferences in favor of the plaintiff"). However, a court "need not credit conclusory allegations or draw farfetched inferences." *Sonoco*, 877 F. Supp. 2d at 205 (internal quotation marks omitted). Whenever a defendant's sworn affidavit contests the allegations in the complaint, the plaintiff can no longer rest on those allegations. *Callum v. CVS Health Corp.*, 137 F. Supp. 3d 817, 835 (D.S.C. 2015). Instead, the plaintiff bears the burden to present an affidavit or other evidence showing jurisdiction exists over the non-resident defendant. *Id.*

To meet their burden, Plaintiffs must show (1) that South Carolina's long-arm statute authorizes jurisdiction, and (2) that the exercise of personal jurisdiction complies with the constitutional due process requirements. *E.g.*, *Christian Sci. Bd. of Dirs. of First Church of Christ, Scientist v. Nolan*, 259 F.3d 209, 215 (4th Cir. 2001). South Carolina has interpreted its long-arm statute to extend to the constitutional limits of due process. *See S. Plastics Co. v. S. Commerce Bank*, 423 S.E.2d 128, 130–31 (S.C. 1992). Thus, the first step is collapsed into the second, and the only inquiry before the court is whether the due process requirements are met. *ESAB Group, Inc. v. Centricut, LLC*, 34 F. Supp. 2d 323, 328 (D.S.C. 1999); *Sonoco*, 867 F. Supp. at 352.

Due process requires that a defendant have sufficient "minimum contacts with [the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)). This standard can be met in two ways: "by finding specific jurisdiction based on conduct connected to the suit or by finding general jurisdiction." *ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707, 711–12 (4th Cir. 2002) (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984)). Plaintiffs assert this Court has specific jurisdiction over Defendants. (Dkt. No. 15 at 10). To determine whether specific jurisdiction exists, the Court considers: "(1) the extent to which the defendant has purposefully availed itself of the privilege of conducting activities in the state; (2) whether the plaintiffs' claims arise out of those activities directed at the state; and (3) whether the exercise of personal jurisdiction would be constitutionally 'reasonable.'" *Carefirst of Md.*, 334 F.3d at 397. (internal citations omitted). In other words, the defendant must have "minimum contacts" with the forum,

the cause of action must arise from those contacts, and the exercise of personal jurisdiction must be reasonable. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471–76 (1985).

Courts evaluate the reasonableness of personal jurisdiction by considering a variety of factors including: "(a) the burden on the defendant, (b) the interests of the forum state, (c) the plaintiff's interest in obtaining relief, (d) the efficient resolution of controversies as between states, and (e) the shared interests of the several states in furthering substantive social policies." *Lesnick v. Hollingsworth & Vose Co.*, 35 F.3d 939, 946 (4th Cir. 1994). "Minimum contacts" and "reasonableness" are not independent requirements; rather, they are aspects of the requirement of due process, and thus "considerations sometimes serve to establish the reasonableness of jurisdiction upon a lesser showing of minimum contacts than would otherwise be required." *Burger King*, 471 U.S. at 477.

## Analysis

### I. Application of the First-to-File Rule to this Case

There is little to support the use of the first-to-file rule here. Although the Florida Action was filed first, any reason to transfer or stay ends there. The issues are not precisely the same. While both actions concern, in part, Defendants' trademarks, the instant action is broader in scope than the Florida Action. Only the instant case involves Booze Pops Distribution and Booze Pops Corporate, and only the instant case concerns the ERSA, which itself contains a forum selection clause designating the courts of South Carolina, both state and federal, the proper venue for claims arising from it. *See CACI Int'l*, 70 F.3d 111, 1995 WL 679952, at *6 (finding district court did not err in hearing second-filed action because, among other things, it was broader than the first-filed action). Moreover, efficiency is not served through a transfer or

a stay because neither Booze Pops Corporate nor Booze Pops Distribution are defendants in the Florida Action, and the Florida court has already held that it lacks personal jurisdiction over Booze Pops. The Court finds no basis for the application of the first-to-file rule. *See Affinity Memory & Micro, Inc. v. K & Q Enters., Inc.*, 20 F. Supp. 2d 948, 954 (E.D. Va. 1998) (noting courts have declined to defer to the first-filed action when little if anything has been done to advance that action for trial). *Cf. U.S. v. One Oil Painting Entitled Femme en Blanc by Pablo Picasso*, 362 F. Supp. 2d 1175, 1185–1186 (C.D. Cal. 2005) (denying transfer to the venue of the first-filed action where jurisdiction over the painting that was the subject matter of the action was exclusive to the court of the later-filed action).

**II.  Specific Jurisdiction in this Case**

    **a.**  BPCC, R.E. Flipz, and Ruskaboy

Construing the Plaintiffs' allegations in their favor, the Court finds that R.E Flipz and BPCC have created a substantial connection to South Carolina, while Ruskaboy has not.[1]

As a preliminary matter, this Court has personal jurisdiction over R.E. Flipz and BPCC as both entities—signatories to the ERSA—consented to the jurisdiction of the courts of South Carolina, both state and federal, as it pertains to claims arising from said agreement. *See*

---

[1] Courts consider various factors when analyzing specific jurisdiction. *Davis v. Horry Cty. Council*, No. 4:17-CV-391-DCC, 2019 WL 3305886, at *6 (D.S.C. July 23, 2019). These factors include: (1) whether the defendants maintain offices, employees, or agents in the forum state; (2) whether the defendants own property in the forum state; (3) whether the defendants solicited business in the forum state; (4) whether the defendants engaged in significant or long-term business activities in the forum state; (5) whether the parties contractually agreed that the forum state's law should govern disputes; (6) whether the defendant made in-person contact with a resident of the forum state while conducting business; (7) the nature, quality, and extent of the communications between the parties; and (8) whether a contract was due to be performed in the forum state. *Id.* (citing *Universal Leather, LLC v. Koro AR, S.A.*, 773 F.3d 553, 560 (4th Cir. 2014))

*Associated Receivables Funding, Inc. v. Nu Specialty Foods, Inc.*, No. CIV.A. 6:05-2819-HFF, 2005 WL 3348922, at *2 (D.S.C. Dec. 8, 2005) (noting that forum selections clauses provide *in personam* jurisdiction in South Carolina as "[b]oth the federal courts and the South Carolina courts enforce forum selection clauses which are not fundamentally unfair"). Beyond citing the ERSA's forum selection clause, the Complaint provides examples of R.E. Flipz and BPCC directing "activities toward the forum state." *Sheppard v. Jacksonville Marine Supply, Inc.*, 877 F. Supp. 260, 267 (D.S.C. 1995). Plaintiffs allege that R.E. Flipz and BPCC violated the ERSA by engaging in mobile vending of AIPs within South Carolina. *See, e.g.*, (Dkt. No. 1 at 42-44). Plaintiffs further allege that R.E. Flipz and BPCC offer franchise opportunities in South Carolina, maintain a distribution center in South Carolina for their AIPs, *see* (*id.* at 39, 48), and that R.E. Flipz and BPCC have infringed Plaintiffs' service marks via advertising that directly targets or was produced in South Carolina, *see, e.g.*, (Dkt. Nos. 1-27, 1-28).

The Court thus finds that R.E. Flipz and BPCC have the requisite minimum contacts that figure predominantly in Plaintiffs' causes of action to allow this Court to exercise personal jurisdiction over them. *See Hager v. Omnicare, Inc.*, No.5:19-cv-484, 2019 WL 6173539, at *4 (S.D.W. Va. Nov. 19, 2019) (finding personal jurisdiction over an out-of-state defendant that sub-contracted with West Virginia businesses, including distribution centers, to distribute defendant's products and noting that, "[a]t this stage in the litigation, it is hardly a novel proposition to conclude that a company entering a contract with *continuing* obligations within a state could be haled into court in that state"). Additionally, given R.E. Flipz and BPCC's continuing presence in South Carolina, the Court finds that exercising personal jurisdiction over said entities does not offend traditional notions of fair play and substantial justice. *See Asahi Metal Indus. Co. v. Superior Ct. of Cal.*, 480 U.S. 102 , 113 (1987) (noting "[a] court must

consider the burden on the defendant, the interests of the forum State, and the plaintiff's interest in obtaining relief") (internal quotation marks omitted).

As it concerns Ruskaboy, however, the Complaint is generally devoid of substantive allegations related to Ruskaboy's connections with South Carolina. For that reason, "South Carolina's exercise of specific personal jurisdiction over Ruskaboy would violate the Due Process Clause," and Ruskaboy must be dismissed as a party defendant. *See Sheppard*, 877 F. Supp. at 267.

    **b.** Joseph Isaacs

Next, the Court examines the contacts Isaacs has had with South Carolina. The Complaint alleges that Isaacs is the COO of BPCC, "the individual who controlled and operated R.E. Flipz and Ruskaboy at all times pertinent to the conduct alleged in this Complaint," and the "principal and driving force who has directed and/or participated in the wrongful conduct of R.E. Flipz, Ruskaboy, and BPC[C] described in this Complaint." (Dkt. No. 1 ¶ 14).

With respect to claims against corporate officers such as Isaacs, "personal jurisdiction of a non-resident individual cannot rest on the mere fact that a person is an officer or employee of a defendant corporation subject to personal jurisdiction in South Carolina. *Scurmount LLC v. Firehouse Rest. Grp., Inc.*, No. 4:09-cv-618-RBH, 2010 WL 11433199, at *12 (D.S.C. May 19, 2010) (citing *Columbia Briargate Co. v. First Nat'l Bank in Dallas*, 713 F.2d 1052, 1064–65 (4th Cir. 1983)). Instead, "[w]hat is required is some showing of direct, personal involvement by the corporate officer in some decision or action which is causally related to the plaintiff's injury." *Magic Toyota*, 784 F. Supp. at 315 (quotation omitted). Direct, personal involvement exists when the defendant is the "guiding spirit" or "central figure" behind a challenged corporate

activity. *Id.* 313–15. For example, in *Magic Toyota*, the court found that it had personal jurisdiction over corporate officers who were alleged to have taken purposeful actions that resulted in injury to the plaintiff in South Carolina. *Id.* at 315.

The Court finds it has personal jurisdiction over Isaacs. The Complaint contains allegations of wrongdoing Isaacs, COO of BPCC, allegedly directed toward or committed while physically in South Carolina. *See* (Dkt. No. 1 ¶¶ 170, 188-190) (describing a November 10, 2019 video posted to the Buzz Pop Cocktails' Instagram account captioned "#Buzzpops hits Charleston, SC," in which Isaacs, physical present in Charleston, allegedly refers to Plaintiffs' AIPs as "imitations" of Buzz Pop Cocktails); *see also* (Dkt. No. 1-25) (attaching an article published on January 7, 2019 in which Isaacs states "Franchisees are the next logical step whereby mobile units can sell directly to the public, in markets, such as South Carolina . . ."). The Complaint also alleges that it was Isaacs who signed the allegedly misleading trademark applications R.E. Flipz and Ruskaboy filed with the USPTO. (Dkt. No. 1 ¶¶ 82, 97, 108). Thus, Plaintiffs have sufficiently shown that Isaacs had "direct, personal involvement in . . . [an] action which is causally related to the plaintiffs' alleged injuries." *Magic Toyota*, 784 F. Supp. at 315. *Compare Sheppard v. Jacksonville Marine Supply, Inc.*, 877 F. Supp. 260, 265 (D.S.C. 1995) (finding that exercising personal jurisdiction over a corporate vice president would not comport with the Due Process Clause where the vice president did not negotiate the financial transaction at issue, rarely travels to the state, and the plaintiffs did not make any specific allegations connecting him significantly to their causes of action). Additionally, given Isaacs' continued relationship with R.E. Flipz and BPCC and given said entities' continuing presence in South Carolina, the Court finds that exercising personal jurisdiction over Isaacs does not offend traditional notions of fair play and substantial justice.

    **c.** Juan C. Sastre

Lastly, the Court examines the contacts that Sastre has had with South Carolina. In their Complaint, Plaintiffs allege that Sastre is the President of BPCC. Sastre is allegedly a "driving force directing and/or materially participating in the wrongful conduct alleged in this Complaint." (Dkt. No. 1 ¶ 15).

Upon a review of the Complaint and its attached Exhibits, the Court finds it lacks personal jurisdiction over Sastre. Beyond references to articles or videos about Buzz Pop Cocktails featuring Sastre, Sastre is alleged to have once visited South Carolina and to have accompanied Isaacs as *Isaacs* spoke to and attempted to "elicit information [from Plaintiffs' employees] about how the BOOZE POPS trucks are operated." (*Id.* ¶¶ 188-189). This lone visit to Charleston does not establish "minimum contacts" with the forum. *See Outpost Cap. Manag., LLC v. Prioleau*, No. 2:16-cv-3684, 2017 WL 5514512, at *2 (D.S.C. Nov. 16, 2017) (noting the "fact that Mr. Minor may have been at a vacation rental in Kiawah, South Carolina during a portion of the negotiations of the Share Transfer and Voting Agreement in no way suggests that claims arising out of a purported breach of that agreement arise from or relate to Mr. Minor's vacation in South Carolina"). Sastre must be dismissed as a party defendant.

## Conclusion

For the reasons above, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' motion to dismiss (Dkt. No. 14). Defendants' motion is granted to the extent that Ruskaboy Holdings, LLC and Juan C. Sastre are **DISMISSED** as party defendants. Defendants' motion is otherwise **DENIED**.

-5-

**AND IT IS SO ORDERED.**

s/ Richard Mark Gergel<br>United States District Court Judge

June 21, 2020
Charleston, South Carolina